UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

K<small>ELLOGG</small> C<small>OMPANY</small> and )
K<small>ELLOGG</small> USA, I<small>NC</small>., )
  Plaintiffs and Counter-Defendants, )
)
-v- )
) No. 1:11-cv-272
FPC F<small>LEXIBLE</small> P<small>ACKAGING</small> C<small>ORP</small>., )
  Defendant, Counter-Claimant, and ) HONORABLE PAUL L. MALONEY
  Third-Party Plaintiff, )
)
-v- )
)
T<small>HE</small> I<small>NTERNATIONAL</small> G<small>ROUP</small>, I<small>NC</small>., )
  Defendant and )
  Third-Party Defendant. )
_____)

## OPINION AND ORDER
## AFFIRMING MAGISTRATE JUDGE'S DISCOVERY ORDERS

Before the court is Plaintiffs' appeal of the magistrate judge's order granting a protective order forbidding Kellogg from using the deposition of Karina Diaz against FPC in this matter, as well as the magistrate judge's later order denying Kellogg's motion for leave to depose Ms. Diaz. (ECF No. 147.) For the reasons discussed below, the court affirms the magistrate judge's orders, though under somewhat different reasoning.

I.   **B**ACKGROUND

On March 18, 2011, Kellogg Company and Kellogg USA, Inc. (collectively, "Kellogg") filed suit against FPC Flexible Packaging Corp. and (later) The International Group, Inc. ("IGI") for damages based on what Kellogg claims are defective cereal-box liners. Kellogg claims that the liners contained elevated levels of hydrocarbons, which affected the cereal's flavor and caused gastrointestinal distress in Kellogg's customers. It seeks damages for, among other things, the costs

of recalling large amounts of cereal that was affected by these defective liners.

In July 2011, the court entered a case management order setting the close of fact discovery for April 30, 2012. (ECF No. 20.) On the parties' stipulation, the court later extended the period for nearly a year, to April 1, 2013. (ECF No. 110.)

On March 22, 2013, only ten days before the scheduled close of fact discovery, Kellogg served notice that it planned to depose one of its customers, Karina Diaz, in San Antonio, Texas on March 28. On March 26 FPC moved for a protective order on grounds that Kellogg had not listed any customers in its Rule 26 disclosures and that its delay in scheduling this deposition was uncalled for and would "work a great hardship" if the deposition was allowed to go forward. (ECF No. 130.)

This court referred the motion to Magistrate Judge Scoville, who granted it later that day. (ECF No. 133.) The magistrate judge held that "[u]nder Rule 32(a)(5)(A), a deposition cannot be used against a party who has received less than fourteen days' notice of the deposition and has promptly moved for a protective order." Each of those conditions held in this case, so the judge ordered that Kellogg "may not use against defendant FPC Flexible Packaging Corp. any deposition taken by plaintiff in the State of Texas on March 28, 2013." (*Id.*)

Kellogg then moved for reconsideration and for leave to depose Ms. Diaz. (ECF No. 134.) The magistrate judge denied the motion, however. (ECF No. 138.) Aside from utterly failing to address Rule 32, the magistrate judge noted, Kellogg "waited until the eleventh hour and fifty-ninth minute to decide to depose a customer witness," despite having known about them since before filing suit. Kellogg made no attempt to extend deadlines or get court approval of its belated deposition, and it "ha[d] not shown any reason for the court to reward its efforts at brinksmanship in this case."

2

Kellogg now appeals the magistrate judge's decisions, per Fed. R. Civ. P. 72(a) and Local Rule 72.3. (ECF No. 147.)

## II. DISCUSSION

Under Rule 72(a), a district judge "must consider timely objections" to a magistrate judge's resolution of a nondispositive matter and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Kellogg argues that the magistrate judge's orders were contrary to law in part because Rule 32(a)(5)(A) applies only where a motion for protective order "was still pending when the deposition was taken." The magistrate judge granted FPC's motion before the deposition was scheduled, Kellogg points out, so this provision could not apply. FPC, for its part, counters only by claiming that "the Court's resolution of the objections . . . was most reasonable."

Kellogg has the better of this argument. Even though the magistrate judge's quick handling of FPC's motion should be commended, that short response time itself meant that the judge's order ran afoul of Rule 32(a)(5)(A). Because the deposition did not take place while FPC's motion was still pending, that Rule does not apply here.

This does not mean that FPC's motion lacked merit or that Kellogg should be granted leave to depose Ms. Diaz, however. Rule 30(b)(1) still requires "reasonable written notice" of an oral deposition, and Rule 26(c) authorizes the court to take steps "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Under the circumstances here, the court finds that a protective order preventing Kellogg from deposing Ms. Diaz is appropriate. Kellogg scheduled Ms. Diaz's deposition in a different state, with only six days' notice, and very near the end of the discovery period, when at least several other depositions were taking

3

place or being prepared. Further, it scheduled this deposition at the last minute despite knowing about Ms. Diaz's potential importance since well before this lawsuit was even filed. Indeed, Kellogg's decision to depose Ms. Diaz was a significant turnabout; until it noticed the deposition, Kellogg had consistently and repeatedly expressed its view that Ms. Diaz and other complaining customers had no information that was relevant to this case. Kellogg withheld their contact information from its initial discovery responses and refused to provide it until ordered to do so by this court. It declined to list Ms. Diaz or any other customer as an "individual likely to have discoverable information . . . that [it] may use to support its claims or defenses," as Rule 26(a) requires, and to this day it does not appear to have supplemented those disclosures, as Rule 26(e) requires.

Kellogg argues that the timing of its notice should be excused because it was as timely as possible under the circumstances. To start with, Kellogg did not realize until relatively late in discovery that testimony from Ms. Diaz and other customers could be relevant to this case. It "had assumed [that] contacting those consumers would not be necessary because discussions with defense counsel had left Kellogg with the impression that the Defendants did not intent to challenge the need for a recall," but that "further discussions and questioning of Kellogg's witnesses at depositions about consumer complaints" suggested otherwise. Therefore, "beginning in March 2012 counsel for Kellogg attempted to contact consumers who had complained in June 2010." It failed to get in touch with anyone until March 8, 2013, however, when it first contacted Ms. Diaz. For 13 days, counsel worked with Ms. Diaz to schedule a time for the deposition. As soon as they agreed on a date and time, "Kellogg promptly notified FPC and IGI that Kellogg 'was in the process of attempting to schedule a deposition with a consumer in San Antonio, TX." The next day, it noticed

4

the deposition. Kellogg notes that it showed some flexibility here. It "explained that the deponent was available 'at the end of March or in April'" and that Kellogg could reschedule as needed. "Counsel believed this proposal was acceptable because, even though discovery was set to close on April 1, 2013, the parties had already agreed to conduct several depositions after the cutoff."

These facts do not excuse Kellogg's actions. Rather, they amply demonstrate the unreasonableness of Kellogg's course of conduct. First, Kellogg's claim that it originally thought of consumer testimony as irrelevant is misleading. Kellogg well understood that the testimony could help show that its recall was reasonable. It simply assumed that Defendants would not challenge that claim. Kellogg does not appear to have confirmed this point through formal discovery or even through the written or recorded statement of opposing counsel, despite the fact that Defendants listed these people as potential witnesses in their Rule-26 disclosures. In any case, by March 2012 Kellogg understood that FPC was likely to challenge the reasonableness of its recall—at least, it was worried enough about the possibility that it began tracking down the complaining customers. But Kellogg did not supplement its Rule-26 disclosures to show that it now considered these folks potential witnesses, and it did not tell FPC informally that it hoped to depose any customers. Instead, Kellogg hid its plans for a full year. Even after it got in touch with Ms. Diaz and began trying to schedule a deposition, Kellogg did not tell FPC what it was up to. The first time FPC got even a hint that Kellogg wanted to depose a customer, or that it considered their testimony relevant to its case, was on March 21, after it had finalized plans with Ms. Diaz. By that point, FPC had no chance of finding and deposing any other customers who could confirm or contradict Ms. Diaz's claims.

This is the key problem with Kellogg's conduct. It acted as if it was not planning to depose any consumers, hiding that fact until it was too late for FPC to conduct proper discovery on the issue. Kellogg argues that if FPC wanted to depose consumers, it should have done so earlier; after all, it had been claiming all along that the consumer testimony was relevant. But this ignores the way that this evidence would come into play in this case. FPC has long maintained that the burden is on Kellogg to prove that a recall was necessary. As FPC's counsel stated at the January 25, 2012 hearing on its motion to compel discovery of the consumers' contact info:

> [A]s far as we know from the information we've received from Kellogg . . . those [consumers] are the only witnesses that had experienced what [Kellogg claims] is the results of a breach of warranty.
>
> * * *
>
> All we have are these call reports which are hearsay at best. I mean, this is somebody saying I got sick from this.
>
> I mean, **if Kellogg is going to proceed to trial and claim all these things happened with no witnesses, they're not going to call any of these people, then I think the case ends** because we object on hearsay and, you know, that's the end of the ball game.

(ECF No. 142, at 19 (emphasis added).) Counsel's legal analysis may be correct; it may not. This court is skeptical. But the point is that with no suggestion from Kellogg that it intended to depose these consumers or call them as witnesses, FPC could have decided that it did not need to spend the time and money to do so itself. By concealing its intentions until the last minute, Kellogg effectively deprived FPC of the chance to take its own discovery on this issue. In so doing, Kellogg violated the spirit, and arguably also the letter, of the Federal Rules of Civil Procedure.

These circumstances distinguish Ms. Diaz's deposition from others that the parties agreed could take place after the close of discovery, and it shows why FPC did not agree to do the same

regarding Ms. Diaz. The court understands that parties often treat discovery more informally than the Federal Rules contemplate. But this informal process requires a certain amount of openness and good faith to work properly. Where a party abandons those norms, it cannot then fall back on the general practice to validate its bad behavior. Kellogg's "brinkmanship," as the magistrate judge properly labeled it, has backfired here.

In light of this background, Kellogg's attempt to depose Ms. Diaz—after a year of trying to locate her and the other complaining consumers—on six days' notice just before the close of discovery was unreasonable. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 327 (N.D. Ill. 2005) ("What would be reasonable even in a late stage of a relatively simple case with few lawyers may take on a very different cast where, as here, the case is exceedingly complex, the depositions are to occur virtually hours before the discovery cut-off, and it was obvious—or at least probable—that the schedules of the deponents and a number of lawyers would be unable to accommodate the belatedly filed notices."). Kellogg did not conduct its discovery in good faith, and the magistrate judge's decision to deny Kellogg leave to depose Ms. Diaz was an appropriate means of protecting FPC from the consequences of Kellogg's behavior.

## ORDER

This court hereby **AFFIRMS** the magistrate judge's rulings (ECF Nos. 133, 138), though for the reasons discussed above rather than Rule 32(a)(5)(A). Defendant FPC's motion for protective order (ECF No. 130) is **GRANTED**, and Plaintiffs' motion for leave to take deposition (ECF No. 134) is **DENIED**.

**IT IS SO ORDERED.**

Date:   July 22, 2013                              /s/ Paul L. Maloney
                                                                        Paul L. Maloney
                                                                        Chief United States District Judge